May it please the court, my name is Robert Lowe from the Department of Justice, and I represent the former Attorney General John Ashcroft, who is being sued in his personal capacity, so the case is against Ashcroft, not New Casey. Let me stop you right there for a second. I had a question as to who the appellants are in this case. The briefs indicate that the only appellant is John Ashcroft, and the docket sheet reads that the appellants are all the defendants. Can you clear that up for me? It is only John Ashcroft who has noticed the appeal.  Yes, sir. The district court here denied absolute immunity to the former Attorney General, holding that the practice of using material witness warrants to detain individuals while investigating them for possible criminal activity was more of a police activity and not a function of a prosecutor, and therefore denied immunity. Mr. Lowe, before we get to that, let's talk about jurisdiction. The cases that were cited by the government with respect to interlocutory jurisdiction and what would otherwise be non-appealable orders all seem to involve preliminary injunctions. Do you have any cases other than cases involving preliminary injunctions where our court has taken jurisdiction in a matter of this nature? I think it's well established that the denial of both qualified immunity and absolute immunity are subject to an immediate appeal. On what case or cases? Well, the Berenz case we cite establishes the right of appeal in qualified immunity cases and necessarily also for absolute immunity. I believe Mitchell v. Forsythe and the other cases are legion recognizing the right to appeal. The rationale is that you have a right not only for money judgment damages but also a right not to stand trial, and that if that immunity is denied at an early stage, such as a motion to dismiss, then the official is being subjected to discovery, and part of the immunity is not to be subjected to discovery where you have a right not to be so. So if you have a right to absolute immunity, that should be decided at the earliest injunction, so too with qualified immunity. But cases you cited do not involve injunctions. I believe at page 2 of our brief we cite the Berenz case, which is a qualified immunity case, and that case itself cites other Supreme Court cases. Well, what's the cite on that case? 516 U.S. 299, and I'm happy to supply more citations on that. No, that's fine. That's all I need. And it's critical that for the immunity to be effective that it be heard now and that if there is a right to immunity that it be recognized at the earliest stage. And a right to absolute immunity, contrary to the view of the district court, cannot be circumvented by electing that a function of a prosecutor was undertaken with an improper motive or with an improper purpose. In Asherman v. Pope, this court, Sinigan Bank, held that motive is simply not relevant to an absolute immunity inquiry. Even if there's an allegation of improper motive there, an allegation that the prosecutor was acting under the motive of bribery, you look to the function, not to the purpose and not to the motive of the prosecutor. Here, the underlying function at issue is clearly the act of a prosecutor. The act of a prosecutor in designating a witness in a criminal case, an ongoing criminal case after an indictment, identifying a witness for that ongoing criminal case, deciding that that witness is material for the criminal case, and deciding to secure the witness through a judicial proceeding. That is all a prosecutorial function. It cannot be performed without the prosecutor petitioning the district court judge in the criminal case. Pardon me, sir. In this case, the indictment of al-Husayn had already been returned. That's correct, sir. Had he been taken into custody? That is not of record in this case. All right. So al-Husayn, against whom or for whom or about whom Kidd was to testify, was already indicted. They found probable cause that al-Husayn had performed some criminal acts, right? Correct, Your Honor. And so then this witness was seized by the arrest warrant after probable cause had been determined as to al-Husayn. Right. If there's already a probable cause determination, then the prosecutor makes a determination that this witness has material information, that it's necessary to secure that witness for that ongoing criminal trial. All these are functions of a prosecutor during the judicial phase of a criminal case. In this particular instance, with the exception of the jurisdictional issue, which was decided on a 12b-2 matter, the rest of the case was decided by the district court on a 12b-6 matter approach. Is that correct? That's correct. So for purposes of our analysis, we have to assume that the facts of the First Amendment complaint are accurate, generally speaking. Is that correct? That's correct within the boundaries of Twombly. Right, exactly. So in this particular case, there's been no discovery, there's no analysis of any of the underlying things which the government may very well put forward and defeat the plaintiff in this case. But at this stage – Can I make one caveat? Clearly. As to the personal jurisdiction argument, which is also before the court, there was a submission by the government of the Lindquist Declaration, and in deciding a personal jurisdiction issue, the court can and should make a factual inquiry. For purposes of jurisdiction. For purposes of jurisdiction. I understand that. But for purposes of absolute immunity, for example, we have to take what's stated in the First Amendment complaint generally as being correct. Not the legal conclusions, but the underlying facts. No, no, just the statement of facts. And one of the things in the complaint is they unlawfully used the mature witness statute, but the allegations, it's still the act of a prosecutor in seeking a material witness, and it's still a policy by the Attorney General, alleged policy, regarding the use of material witness warrants. But for purposes of our analysis here, isn't it correct that under Buckley v. Fitzsimmons that function, inquiry into function, which you've agreed is the proper function here, or proper determination, permits an inquiry into the immediate purpose. Isn't that accurate? I don't believe it. You look at the function of the prosecutor and the act, not the purpose of the prosecutor. I understand you don't look into the intent, but you look into the function, and the function allows you to look into the immediate purpose according to Buckley v. Fitzsimmons. The purpose of the function, not the purpose of the prosecutor. Correct. So the purpose of the function in a material witness case is for the judge and the prosecutor to decide that a witness for an ongoing criminal case is material and needs to be secured. The decision to call a particular witness is no doubt a function of a prosecutor. The decision whether he's material and needs to be secured for trial is another act of a prosecutor in the judicial phase. So if you look at it in a functional approach, and you look at the purpose of that function to the judicial phase of a criminal trial, that's the appropriate inquiry. Well, it is, is it not, so long as the, remember we're talking about a material witness here and not somebody for whom the probable cause exists. There really couldn't be probable cause for a material witness. Is that right? No, the prosecutor has to establish, in order for the warrant to be issued by the criminal judge in that criminal phase of a criminal proceeding, has to establish probable cause that the person has material information and probable cause that the person is a flight risk and wouldn't attend otherwise, absent being secured by the, so yes, there doesn't need to be probable cause they committed a crime, but there has to be a finding by the judge in the criminal case of both those materiality and. . . I'm sorry. There's a government contending that the probable cause that's necessary for finding the commission of a crime is the same as that showing necessary to issue out a material warrant arrest, material witness warrant. I mean, of course, it's probable cause of different things. It's still a probable cause standard. Is the standard the same? It's the same requisite amount as far as how much evidence you need to produce, I think, is probably the same. But the question is, in an ongoing criminal case, the decision of a prosecutor whether a witness is material or not is an inherent function of a prosecutor as part of the judicial phase. And the plaintiffs try to get around this by saying, well, even if the assistant U.S. attorney has absolute immunity, the attorney general of the United States shouldn't because he has adopted a policy. But this court in Roe v. San Francisco said there was no basis for denying absolute immunity to the supervisor, be it the district attorney or the attorney general of the United States, if his policy is regarding a function of a prosecutor regarding criminal cases. So, too, in Hainsworth v. Miller, the D.C. Circuit said that where the attorney general or supervisor provides guidance to the prosecutors about which cases to bring, how to allocate resources, which type of criminal cases to emphasize, these are all functions, whether it be performed by the line prosecutor or by the supervisor, which have absolute immunity. So, too, in Gensler, this court said that the supervisor had absolute immunity and that the allegation that it was wrongdoing by him did not circumvent that absolute immunity. There was an allegation that the supervisor, district attorney, not only was aware of perjury being used by the line attorneys but actually encouraged the use of perjured testimony. That was in Miller also. That's correct. So the fact that we have a policy here does not take it out of the realm of absolute immunity. But it does get back to the question of whether you're performing an investigatory function or a prosecutorial function, right? Well, you have to look at the functional. You have to look at the functional. Right, I understand we're talking about functional. But it's not enough to say, well, he's, for example, if the attorney general had a policy of saying for criminal cases, we're going to seek material witness warrants where the witnesses are foreigners and more likely to flee, that we should, in those cases, aggressively use material witness warrants. There would be no question that that would get absolute immunity because that would be part of the criminal case. The only thing which distinguishes it here is the motive. They're saying instead of the motive here being to secure the witness, he also had a secondary or, in their view, a primary motive to help out detaining people who are a suspect of criminal activity. But that basically takes the functional test and makes it a motive test. Well, for example, in Gensler, the court said witness interviews may serve either an investigatory or an advocacy-related function. So if that's correct, at least that's what our circuit held, then you still get down to the function. Is that correct? The courts look at the witness interviews generally when it's a prosecutor. If it's before the indictment, they look at that as part of the law enforcement investigation usually. But when it's post-indictment, that's material that's subject to absolute immunity from the prosecutor perspective. Is it your point that motive, malicious as it may be, has absolutely no distinctive feature to make it either investigatory or prosecutorial? Absolutely, Your Honor, and that's the holding of Ashleman v. Pope. And moreover, it would really eviscerate the immunity and take the functional test and turn it on its head and make it a motive test and recognize that it is commonplace for a prosecutor to bring charges against low-level officials with the real intent of getting them to then turn over state's evidence on someone else. Quite frequently, there is a primary motive of assisting law enforcement efforts regarding someone else. And that's what the allegation here is. And if that is sufficient to overcome absolute immunity, that immunity becomes relatively meaningless. What role, if any, does the fact, at least according to the First Amendment complaint, that Mr. Al Kidd had been talking with the FBI for, I think, like six months, had answered their questions. They never once asked him to appear and testify. They never asked him, indeed, much of anything that he did not cooperate on. The complaint, again, says that he would have been perfectly willing to testify, and yet they went ahead and used the material witness statute. Does that have any implication at all from the government's perspective? I think it has no implication in that, for example, if the AUSA was being sued here because he was performing a function of a prosecutor and seeking material. When he had to go before the district court judge and swear out or submit affidavits to support it and make arguments to support it, after Mr. Al Kidd was detained, there had to be a court hearing to justify his further detention. Moreover, after you're detained, there's an ongoing dialogue between the court and the prosecutor about how long that detention should be and a continuing need of the prosecutor to justify the detention. The bottom line is all of those are acts of a prosecutor or prosecutorial function, and the facts that you submit would make an argument that perhaps the material witness warrant should not have been issued in that case. But the act of seeking it, the decision to seek it, and the discretionary matter, that is all subject to absolute immunity. And so, too, the overlying... Even if it served an investigatory purpose? Even if it served absolutely, Your Honor, because as I noted, the decision of a prosecutor to charge a low-level official or a criminal with the hope of getting him to turn himself in, that could be primarily with the eye on assisting a criminal investigation, and that gets absolute immunity. If this is a function of a prosecutor, the fact that you say, well, the evidence regarding Mr. Al-Kid was particularly weak doesn't change things. Moreover, there's no allegation here that the former attorney general had anything to do with the specifics of the affidavit here as to whether it was strong enough or not. There was an allegation that he had a policy about aggressively using material witness warrants. So the facts you spell out are saying, well, he probably would have cooperated. Now, first of all, even if someone says they're willing to cooperate in the complaint, the prosecutor gets discretion about that. Well, there's no challenge to the sufficiency of the application for the issuance of the warrant. There wasn't at the time, Your Honor, no. And even afterwards, it was just a question of whether he should be released with conditions or not. And ultimately, when he was brought before the district court, after he was transferred across the country, the government was not seeking to detain him in prison. What I mean to say is that Mr. Kid did not bring up in a motion to quash the warrant that he had been talking to the FBI that he seemed to be cooperating, that he wanted to testify. He didn't bring that up. He could have brought all that up to the district court, and he could have asked for the warrant to be quashed, and then he could have gone on his travels. He didn't do that. He's only raising this now in his complaint. I have only a few more minutes. I'd like to save that for rebuttal. Thank you. Good morning, Your Honors. Lee Gallant for Mr. Al-Kid. You may please the court. Let me just pick up on that conversation that my colleague was having with the court, and particularly about the absolute immunity. Judge Smith, you are absolutely right that you have to look at function. The government may not like this court's precedents, may disagree with them, but that is this court's precedents, that you have to look at function, and there's a difference between function and motive. If the prosecutor is acting in a prosecutorial function, then you would not look at motive. No matter how malicious those motives may be, race, religion, politics, you would not look at the motive. But you have to, under the Supreme Court's precedents and this court's precedents, look at the function. And that is what we have alleged, and as Judge Smith has pointed out, we are on a motion to dismiss. And let me address the point that the government was making, the specific point that, well, here, Mr. Al-Hussein had already been indicted, so this is a post-indictment use of the material witness statute, according to the government, in a prosecutorial function to gather evidence. This court has addressed that identical situation in K.R.L. and Gensler in the search warrant context. There, in K.R.L. The first search warrant that Judge Goodwin dealt with in K.R.L., post-indictment, when it was seeking evidence of the crime in the indictment, was found valid. Well, Your Honor, I think the first one. True? No, as I recall, Your Honor, respectfully, I think that the first one was sent back down for more evidence, but certainly as to the second and third, it was a problem. But my point, Your Honor, sort of the overarching point, I think, here, is that what the court did in K.R.L. is absolutely what Judge Smith is suggesting here, is that the threshold inquiry was, we can't just look at this and say, well, search warrants can be prosecutorial after there's already an indictment because the prosecutor is using it to gather additional evidence to further the prosecution. What the court said is, we need to look at the evidence. And that case came up on summary judgment and looked very carefully at the evidence and contrary to what the government is suggesting, did not just look at the face of the warrant. It actually looked at the prosecutor's press statements in a radio show. It looked at the depositions to determine the function. And what the court said is, well, some of the search warrants here go to a prosecutorial function because they're intended to gather evidence to further the prosecution. But other parts of the search warrant, based on the deposition testimony and the press statements, very clearly showed that it was an investigative function being carried out by the prosecutor to gather additional evidence about additional crimes against additional people. That is conceptually identical to what we have here. We have Mr. al-Hussein's indictment. Then we have a material witness warrant used to gather additional evidence. They're claiming that it was used solely to gather additional evidence against Mr. al-Hussein. We very clearly say that the function was to gather evidence against Mr. al-Kid. That was the function under Kidd. You're mixing up the words function, purpose, and motive. And, by the way, you never really in your brief told me what the difference between purpose and motive is. Maybe you can get to that later on. The function test in Buckley is, what is the prosecutor doing? In this case, he's getting an arrest warrant for a material witness. The purpose may be, A, to prosecute al-Hussein with his evidence, or purpose, B, the corrupt, malevolent misuse of his powers. It seems to me that the Supreme Court has very clearly said that so long as its function of getting a search warrant or a material witness, so long as the affidavit is all right and the warrant is all right, that the secondary motive or purpose for issuing it under Imler and the other traffic stop cases is irrelevant. Do you agree with that? No, Your Honor. The traffic stop cases go to qualified immunity. Those are Wren and Devenpeck, and those the government has not cited for absolute immunity correctly. Well, of course, you are right. If it gives you qualified immunity, it should give you absolute immunity. Well, I don't know about that, Your Honor, because absolute immunity is complete insulation even if the law was not clearly established. But let me go to your central point. What the Supreme Court has said is that you need to look at function. And very carefully, Justice Kennedy in his concurrence in Buckley said, different acts can have different purposes or different functions. He was very clear about that. This Court has picked up on that in KRL and Gensler. And I know the government does not like those precedents, but those are the precedents where you could not just look at the act. The act was a search warrant. You had to go beyond looking at what the act was. In those cases, search warrants and here material witness warrants to determine the function. Now, if the function was solely to gather evidence against Mr. al-Hussein, then we agree that once you're in that prosecutorial function basket, we cannot look at malicious motive. But you certainly can make the threshold determination about function. And on a motion to dismiss, we have very clearly alleged it was an investigative function. So I think under this Court's precedents, there's absolutely an absolute requirement that this Court look at the function. And, again, I just think it's settled law in this Court that you need to look at that. And under Buckley, it's the immediate purpose that you're looking at, right, in terms of what you were seeking the warrant for in the first place? Yes, Your Honor, in the sense that you're looking at why is this being done, what function is trying to be achieved. And so is it an attempt to gather more evidence in KRL about the already existing prosecution or, in this case, about the already existing prosecution of al-Hussein, or is it to gather additional evidence, what this Court called? And since this is the 12b-6 appeal, given the allegations of the first amended complaint and the statements about the function that is contended, what role does Al-Kid's cooperation with the FBI previously, as alleged in the first amended complaint, what role, if any, does that play into the inquiry about the immediate function of the warrant? Well, I think, Your Honor, those are part of just some of the allegations that go to showing that this was an investigative function. So we have alleged that this was an investigative function being carried out by the former Attorney General in a number of ways. One, we have cited various statements from the former Attorney General himself, as well as various other high-level officials, that they were going to use the material witness statute after 9-11 in this investigative function. But I think the allegations then get even more specific when it showed how the policy was applied to Mr. Al-Kid. As Your Honor pointed out, they repeatedly asked for his cooperation. He gave his cooperation. He never once was asked to be a witness. He was never told to tell the FBI if he intended to travel. And so all of that, and then when he was interrogated, all the questions were about himself. All of these things suggest that this was an investigative function. And I think one of the other pieces is Director Mueller's testimony. It shows how high-level this whole Idaho probe went. Director Mueller talked about recent successes in the war on terrorism, listed Khalid Sheikh Mohammed, who's now at Guantanamo, as a high-value detainee. The second person he listed was Mr. Al-Kid. This was only a few days after Mr. Al-Kid's arrest. Never mentioned that Mr. Al-Kid had only been arrested as a witness. Put him as part of the Idaho probe, which the Attorney General had formally talked about. It's a central investigation at DOJ, and linked him with people who had been not only charged with terrorism but were being viewed by our government as the most high-level people. So I think all of this goes to investigative function. The other point I would make is the government has somehow suggested, well, because you need a prosecutor here to go seek the material witness warrant, that sort of cuts off Mr. Ashcroft's liability. That's absolutely not true, because you would need a low-level prosecutor. We do not believe that the line prosecutor would necessarily escape absolute immunity if, as in Judge Smith's words, he was engaging in investigative function as well. We simply did not want to overplead this case. We named very few defendants. What we did is have very serious allegations about the Attorney General. We did not know as much about Mr. Lindquist at the time of pleading, so we did not do that. But what you're saying is that we can't determine for purposes of Buckley what the function was that the prosecutor was performing unless we first determine what the purpose of him employing the particular means that he employed. Is that right? Well, I think, Your Honor, this Court has used a number of words. Yes or no? Yes, Your Honor, in the sense that purposes... That's exactly contrary to how I read the cases that one looks at what is the act which the prosecutor is doing. Is he asking a question of a witness in a courtroom? Is he talking to a policeman and giving him advice as to how to do an investigation? The act is the function which Buckley talks about, not the purpose or motive. But you see this differently. Well, Your Honor, I do respectfully. Not only that, because I think in Buckley one thing Justice Kennedy did point out is the same act can have different purposes, different functions. And that's the holdings in K.R.L. and Gensler. The same act may have different purposes, but the same act, whether it's serving a subpoena or asking a question in court, is not the same function. Well, Your Honor, I think that's what Justice Kennedy was getting at, but I think more pertinently that's what K.R.L. and Gensler held. K.R.L. and Gensler used words like objectives, mission. Now, if you want to substitute purpose or goal, they used the word goals. Define what is a function. Absolutely, Your Honor, because that's why they could not look just at the act, because the act was a search warrant, and what they ultimately concluded from the evidence was that there were different purposes, or i.e., functions, for the same act. And I think that's the holding in K.R.L. and Gensler. The other thing I want to just return to a more general point about this case that I think is overarching here. Judge Smith has pointed out correctly that, of course, the allegations need to be taken as true. And that procedural posture is critical here. But I think there's also one additional point about the procedural posture that's especially relevant here. On a motion to dismiss, this Court need not decide every broad constitutional, difficult constitutional question that may arise conceivably depending on how the facts play out. This case should go forward and is supposed to go forward on a motion to dismiss if there are any constitutional theories that are permissible. If we find that Mr. Ashcroft is entitled to qualified immunity, you're out. No, absolutely, Your Honor. We don't have to rule on absolute immunity. We can say that you're right on absolute immunity, but if we find qualified immunity. Absolutely, Your Honor. And if I create any confusion, I just want to be clear. We have to win on absolute immunity and qualified immunity, absolutely. But what I am suggesting is that we have, within those categories, absolute immunity, we have offered both broad and narrow arguments. This Court need not go out and stretch to reach all the broad arguments because we have offered narrow arguments on our allegations, and the government has largely not responded to those narrow arguments except by simply ignoring the allegations in the complaint. About those allegations, you don't allege that the affidavits submitted for the issuance of the warrant were insufficient. You don't think that? Absolutely. Absolutely. That challenge is going forward. Judge Lodge denied motions to dismiss to the United States and the FBI agents and Mr. Ashcroft. Mr. Ashcroft said nothing to do with the formulation of those affidavits. You agree with that? As far as those affidavits go, you never moved to quash the warrant. You mean at the time? Yes, at the time. Well, Your Honor, he had a hearing in Virginia when he was first arrested without counsel. He was advised to go back to Idaho. He didn't make it back to Idaho because of the government's slowness in bringing him there for 15 days. He was given a public defender. He was given a public defender then, and they finally reached an agreement. But that, of course, doesn't keep us from challenging it, and Judge Lodge has found that the allegations are very serious and denied the motions to dismiss. But I think it has no bearing here on Mr. Ashcroft's liability. We are certainly at this point not prepared to say that Mr. Ashcroft literally wrote the affidavit, but that's, of course, not the way supervisory liability works. What practice or policy did he put in line that made the affidavit, A, insufficient and that insufficiency was caused by Ashcroft? Well, I think, Your Honor, the allegations here raise very plausible connections. Let me just go through. We have alleged that there was a policy. We have extensive allegations about the policy, including statements from Mr. Ashcroft and other high-level officials. A policy to allow affidavits to be factually incorrect and factually omissive but yet presented to magistrates for the issuance of warrants. Do you allege that? Yes, Your Honor. That's what I'm saying about one of the narrow arguments we're making. Our first argument, before you would even have to get beyond that issue, is that the Attorney General and other high-level people instituted a policy to arrest material witnesses at all costs regardless of whether there was probable cause to meet the material witness statute requirements, which is flight risk called impracticability under the statute and materiality. And what we have said and what we have alleged are a number of people, a number of people, not just Mr. Alkid, who were arrested on the most flimsy probable cause requirements after cooperating, after coming forward with the FBI. So we absolutely allege that. And that is one narrow ground on which this Court can rule because this Court, the government has suggested unqualified immunity. Well, even if there was a bad purpose, and this is going beyond absolute immunity where we look at the function because it's not qualified immunity, the government is saying, well, if there was probable cause to make the material witness arrest, we can't look at purpose under the driving cases, Rann and Devenpeck. So we have two arguments, one narrow, one broad, and that's why. And under qualified immunity, your Second Circuit case, Al-Wadali, came out after this warrant was issued, right? Yes, Your Honor. But here's the point. Clearly established. Well, here's the point about clearly established, Your Honor, I think, is that we have our first argument, which is narrow, which is that the policy asked the FBI to make these arrests and submit these affidavits regardless, regardless of whether the person met the probable cause requirements under the material witness statute. The government concedes that if that was the policy, it was clearly established that it was a violation of law because the attorney general cannot condone, instruct, ask people to seek material witness warrants where the requirements of the material witness statute were not met. Those allegations are met. The government concedes that it was clearly established. They are simply ignoring the allegations. The second point, which I think the case can be decided just on those narrow grounds. Can I just add one thing? Yes, Your Honor. The district court Al-Wadali case had been decided by this point and published, right? Yes, Your Honor. And I would also note, Your Honor, so on that narrow point, the government is not even arguing that it wouldn't have been clearly established violation of law if the attorney general, as we allege, was saying make these arrests even if the material witness statute was not satisfied. So that's an easy way for this court to allow this case to go forward over qualified immunity. The second point is our broader argument, which the government obviously disagrees with, that even if the material witness statute was satisfied, you can't then look at purpose under the Wren and Devenpette cases, and those are the driving cases. Your Honor, we strongly disagree with that point, although the court may not reach it. In Wren and Devenpette, you're talking about police officers on the street not looking at their subjective motivations in making an arrest. Here we are talking about the attorney general deliberately adopting a policy of saying use the material witness statute in this pretextual manner. Purpose, unlike for arrests, purpose has everything to do with the material witness statute. By definition, the material witness statute is bound up in purpose. So even if you're not going to look at the cop's purpose on the street in making a traffic stop or some drug arrest, you certainly would look at purpose in the material witness statute, and notably the government has not cited a single case using Wren and Devenpette in the material witness context in the qualified immunity context. So Daniels holds just directly contrary. Daniels is a Seventh Circuit case and says absolute immunity applies to material witness warrants. Your Honor, those are all cases going back to absolute immunity, as Judge Smith has pointed out and as Judge Lodge pointed out. Those were cases where there was no allegation that they were using the material witness statute in an investigatory function. So what those cases hold is the act of a material witness warrant can, of course, be prosecutorial. So what you're suggesting to us is that we adopt an absolute immunity ruling contrary to the Second Circuit and Betts and the Seventh Circuit and Daniels. No, absolutely not, Your Honor. Matter of fact, they weren't Daniels and Betts, but don't they involve cases where the people did not show up on the day of trial, so they were just simply trying to compel them to show up at the trial, unlike this situation? Absolutely, Your Honor. Those were even right during the trial. There was absolutely no allegation of an investigative function. Those were classic prosecutorial functions. We have never suggested that a material witness warrant, just like a search warrant, couldn't be used for prosecutorial motives. Of course they can, but here we allege they were used for investigative purposes. In Daniels and Betts, there was absolutely no allegation that it was used for that purpose. In summing up, I would just want to return to one point about jurisdiction to talk about Judge Smith's point. We agree that the immunity issues can come up here on the collateral order document, but I think what you were getting at was can the personal jurisdiction issue be a pendant issue on top of those. We do not think so. We think that the cases the government's relying on, they're relying on three basic cases, Henry Diet, Hendricks, and the Wong case from this court. Henry Diet and Hendricks were injunction cases,  Wouldn't it be much better for us to be able to decide on personal jurisdiction than decide on questions of absolute immunity and qualified immunity if we can? If there is no personal jurisdiction, if under specific personal jurisdiction under the Idaho long-arm statute, there is no evidence here, in fact all the evidence is contrary, that Ashcroft had any direct intervention in Idaho, the first element of the Idaho long-arm statute. If we find that, then we don't have to decide the heavy constitutional issues of absolute immunity and qualified immunity. He's just not subject to the jurisdiction of the court. Your Honor, in this procedural posture, I think you have to reach the immunity issues first. Why? Because the jurisdictional issue is only here as a pendant issue, and the government would concede that. So that's the only way you can even get to It is here as a pendant issue, and we find that there was no jurisdiction because there was no long-arm statute application. That's the end of the case. Well, Your Honor, let me make two points. First, I don't think there is pendant jurisdiction. The government's cases involve injunctions or subject matter jurisdiction. Subject matter jurisdiction has to be looked at as a pendant issue because it goes to this court's appellate jurisdiction. On the long-arm statute, we just need to make a prima facie case. We have absolutely made that. This is not a case that didn't reach the highest levels of the government, and we're simply suggesting that the Attorney General may have knew about a prosecution of a convenience store in Idaho. This is a case that was called the Idaho probe. It was mentioned by the director of the FBI a few days after Mr. Al-Kid's arrest. Before a congressional testimony, Mr. Ashcroft made repeated press statements about the Al-Hussein indictment arrest. We have it fitting a pattern. We have him making repeated statements about this national policy. Our burden at this point is a prima facie showing, a plausibility showing. We have absolutely made that. The evidence in the case is the assistant U.S. attorneys that say that Ashcroft didn't know anything about it. We never discussed it with him, and he was completely out of the circle. Your Honor, let me address that affidavit very carefully because I think the government is relying, as you suggest, very heavily on it. That affidavit is conspicuous in two respects. First, the Attorney General could have put in his own one-and-a-half-page affidavit saying, I had nothing to do with this policy, I didn't know about the Idaho probe. He conspicuously did not put his own affidavit in, even though he's the defendant. The second point about the Lindquist affidavit is the Lindquist affidavit is carefully written, conspicuously does not mention the FBI. The crux of our case is that the Attorney General devised a policy that went through the FBI primarily, and to use it as an investigative tool. Mr. Lindquist carefully says that he personally did not hear from the Attorney General or any other high-level officials. He does not ever say that the FBI, in this case, was not influenced by the Attorney General's policy. And that is why Judge Lodge did not bother to hold a hearing or ask us to put in any evidence, which we said we're happy to do, because that affidavit did not refute the core allegation in our case, which is that the policy ran principally from the Attorney General through the lines to the FBI, and was intended to be an investigative function, as I've already suggested. We've taken over your time. Thank you very much. Let me just ask one question, and then we're done. The affidavit, the Lindquist affidavit, bears only on the 12b-2 portion of the case, is that correct? Absolutely, Your Honor. Not on the 12b-6 portion. Absolutely, Your Honor. I think the government concedes that. Thank you, Your Honor. Thank you. On the question of absolute immunity, the KRL case, which has been cited and relied here, distinguished a search warrant from the case of an arrest warrant or from other acts of a prosecutor, saying that a search warrant is removed from the judicial phase of a criminal case. Let's just contrast that with a material witness warrant, which is issued as part of a judicial phase of a criminal case. The prosecutor comes forward to the judge in the criminal case and has to establish that the witness is material to that criminal case. He identifies that person as a witness to be called in that criminal case. That isn't removed in the slightest bit from the criminal case. It's highly distinguishable from a search warrant situation, which this Court said is removed from the judicial phase. And you look at the purpose. You don't look at the purpose in the sense that the plaintiffs wish you to as to the motives, the mindset. Why are they really seeking this warrant? If you do that, you are basically gutting absolute immunity, Your Honor. But doesn't Justice Scalia indicate that in this particular case, General Ashcroft bears the burden to show that he's entitled to absolute immunity? And under Buckley, we do look into the immediate purpose. That's the language that the case uses. And the immediate purpose of a material witness warrant sought in a criminal case, if you look at the statute, is to identify the witness, their materiality to the case, the function is defined by what the prosecutor is doing, not in his mindset that this is going to help in some other case. If you break that barrier and say, yes, that is a prosecutorial act, which is ordinarily granted absolute immunity. But you're getting back, are you not, to Judge Bea's point that an act is an act is an act is an act. It seems to me like you're suggesting that in this case, in looking at the immediate purpose of this material witness warrant, that the court is not permitted to look into the immediate purpose of the warrant. I know that you're stating categorically that that's what it is, and it was trying to help the earlier case. But given the allegations of the First Amendment complaint, at this stage of the litigation, is not the district court required to take as true what was alleged by the plaintiff in connection with the immediate purpose of this warrant? Well, I think the immediate purpose is still the immediate purpose of the type of function that is being sought. So a search warrant, you need to look at where it falls. Is it something which is relating to an ongoing criminal phase of proceeding? Then it's immediate function. But do you not agree that, under Gensler, that the witness warrant could be used either for an investigatory or a prosecutorial function? Are you saying that in all instances, whenever a material warrant is being used, that it by definition is prosecutorial? Post-indictment, in an existing pending criminal case, as is always, Your Honor. Do you have any case that says that? Well, there is very sparse litigation about material witness warrants. The Daniels case, obviously, is that. Daniels is distinguishable, as we discussed. But do you have any case in any jurisdiction that says that, by definition, that when there's been an earlier indictment and there is a material witness warrant issued, that it is by definition prosecutorial? Well, this court identifying the functions of a prosecutor, which are granted immunity, among the things that it's listed, is identifying witnesses to be called at trial. That's one of the things. Not in the context of talking about material witness warrants, but there's going to be no question that a prosecutor is part of a criminal phase of a judicial proceeding, that part of his function as a prosecutor, no matter how you want to slice that immediate function test, is identifying witnesses to be called in a criminal case and having to go before the judge in that criminal case and explain why that witness is material and why they're necessary to secure them for that criminal case is entirely a prosecutorial function. And the only way that they're getting around that is by saying, yes, he did that, but in his mindset it was really to do something else. I know my time's up. They say that the complaint alleges that the Attorney General gave instructions, gave instructions to the FBI and to the prosecutors to seek these material witness warrants with false information and with omissions. I say look at their complaint. Their complaint never makes that. That's an easy thing to allege, Your Honor. They do not say that. They said they never alleged that the Attorney General told anyone to ignore the standards of the statute, never said that the Attorney General instructed anyone to lie or misrepresent to the court. That is quite an outstanding allegation. But the district court did find that under notice pleading that they had alleged enough to meet the standard. The district court found the allegation of pretext enough to circumvent the absolute immunity and was enough to find it was unlawful. Our position is, first of all, there is absolute immunity, and that if you have a proper motive and you meet the criteria of the material witness warrant, you should get qualified immunity because there's nothing unlawful where you meet the material witness warrant to also have a secondary motive to help an investigation. But you are admitting that motive, in this sense, immediate purpose, is relevant. Not in the sense that the district court used it, and I guess in the sense that you're using it, Your Honor, that the purpose of it is to help an investigation. Again, if that's the test, every – again, I hear they're saying the prosecutor himself could have – the lying prosecutor could have been brought for charges. That would mean a prosecutor decides I'm going to charge low-level guy A on the food chain with trespass, hoping that he's going to turn over evidence on someone else. If his motive is to help an investigation, that rationale will basically eviscerate the absolute immunity. We've taken you over your time. Thank you very much. Thank you for a very informative argument on both sides. Thank you both. Court is now in recess until tomorrow morning at 9 o'clock.
judges: Thompson, Bea, Smith